Good morning, Your Honors, and may it please the Court, my name is Beth Creighton, and I'm here on behalf of Plaintiff Appellee Angela Goodell. This case is about what constitutional protections are afforded to a survivor of domestic violence when her abuser uses his position as a police officer to abuse, harass, intimidate, and menace her. It's also about him enlisting the aid of the police force that he works for and the police force that he used to work for also to intimidate, harass, and violate my client's constitutional rights. I'd first like to talk about my client's right to personal security, which was clearly established at the time of the violation that occurred to her. She had a personal security interest in, a liberty interest in the personal security of her well-being, and the officers had a duty to protect her under the Wood v. Ostender law and L.W. v. Grubbs, and also Camilla v. City of Huntington. This is a police officer who was directly causing danger to my clients, and in addition, the city of Newport, by informing her abuser that there was a complaint made out against her, leaving him on the force with his gun and all the love. You're mixing up a bunch of things. They informed him. They had to inform him sometime, right at the outset. They informed him first instead of second, but they certainly had to inform him. Correct. So that's so basically you're talking about a two-hour period or something in terms of informing him. Of her complaint, right? They informed him and then allowed him to stay on duty with his gun. I thought they didn't. I thought they suspended him at that point. They arrested him, not they, but they then referred him to the Oregon State Police, which was certainly a sensible thing to do. Not at the point where they first informed him. Officer Denison called over to the city of Newport. The city of Newport informed Mr. Page. Right, but this was all over a several-hour period, but the next day they had referred him. Correct, the next day. So you're talking about a security interest for a matter of hours at that point. At that point, that particular instance, yes. Go ahead. In addition, the city of Newport violated her personal security interests by not arresting Kay when they had probable cause on December 19th. That was a violation of the restraining order. And also by conducting the multiple civil standbys that occurred. But that's already, that part of the case is going forward, right? What's going forward is the conduct that occurred inside the civil standbys, not the fact that multiple standbys occurred. You mean as opposed to one? Correct. As opposed to the one that was allowed by Oregon law. Well, the one that was assured by Oregon law. Correct. And that's even a question of law in this case because there was also no contact order that was in place when Mr. Kay was arrested and for the domestic assault of Ms. Goodell. In addition, there was the personal, the liberty interest was established by the Oregon FAFSA laws, the Family Abuse Prevention Act, which created the liberty interest. The focus is on whether the enforcement provisions of the restraining orders can create a liberty interest and we believe it's clear that they can because they contain the objective criteria and requires mandatory action. So in a case where there is suspected domestic violence, an officer is required to arrest if he believes that there's probable cause. In this particular instance, Officer Dennison did not arrest Officer Kay when there was probable cause of domestic violence. In addition, there's a mandatory enforcement provision. Is there any case holding that A has a right to have B arrested? If there's a probable cause, that's what the law says, the statute itself. The statute itself. I don't know, but I'm asking you what constitutional case there is that says that there is a deprivation of liberty in the situation in which somebody could be arrested under state law if they're not arrested. Well, Your Honor, there is no factually specific case to this, analogous to this case. But this could, I mean, this could theoretically arise in hundreds of situations. I mean, there are all kinds of statutes that permit the police to arrest A because he did something to B, but there's no case holding. This is a very, very broad claim that you're making, that if there is probable cause, then they have to arrest. Yes, Your Honor, that's what the statute provides. If that were true. That's what the statute provides. Which statute? ORS. Yeah. Excuse me. 133.055. I thought you were making a federal claim. Correct. We are making a federal claim. But I'm saying that the liberty interest under the Due Process Clause is created by the state law statutes and the mandatory arrest provisions in the state law statutes. So your claim is that that statute creates a liberty interest on behalf of all the people in Oregon, that when there's probable cause to arrest someone who is a potential assailant, that there's no arrest. There's a claim, a violation of due process. Is that correct? Yes, I am claiming that. All right. Aside from everything else, it's a somewhat difficult reading of the statute because it's at least plausible. I don't know what, in fact, has been decided, that they're talking about when somebody is physically present and sees the abuse as opposed to when they just hear about it. That's exactly what the defendants are arguing in this case, that because they weren't present, they had no duty to arrest. But also, see, what's very disturbing is, and I find some of the later things much more troubling and much more interesting, but here what they did was they went, they dealt with their conflict of interest almost immediately, and the guy was arrested the next day. And your claim is that they should have ignored their conflict of interest and made some determination about something they hadn't actually seen themselves, and that for that short period of time, there was a deprivation of liberties. I think you have much stronger claims than that one, having to do with things that happened later. You know, I agree with Your Honor that we have stronger claims for other things that occurred in that time period. But within those hours, I mean, that's critical for a woman who's trying to get out of an abusive situation. That is when the violence is the most prevalent, and that is when the abuser comes out and retaliates because she's trying to get out of his control. And that is why it's so necessary for these mandatory arrest provisions to exist, which is why they were created in the first place, because they wanted to take away the discretion from the police officers about whether or not they can just talk to the guy and just leave him there, because that's exactly what was happening. I mean, luckily, Ms. Goodell was not physically injured in this time period, but there's been case after case of a victim being killed by her survivor when she reports it, especially with a police officer when Officer Kay is already saying things to her like, you know, no one's ever going to believe you because I'm a police officer. No one's ever going to do anything if you report this. He's using his power that was granted to him. This is a recurrent theme of male men versus women, whether they're police officers, whether they're anything. I mean, there are just lots and lots of cases and lots and lots of human drama about that kind of a situation where the police don't get there in time or respond to something else or discredit the real plight that the victim is in, but they don't all result in federal constitutional claims. So I guess I'm not understanding quite why this one should. I'm very sympathetic to the person in that situation. Right. Your Honor, in this particular case, it is the police officers themselves that created the danger. They failed to arrest Officer Kay. They went. That we know is not creating the danger. Duchenne and all kinds of cases. Your Honor, the distinction with Duchenne is that this is not just some member of the public at large who's got this third party that's abusing. This is an officer. This is someone who's given power by the state to, and he's using it or abusing it, I should say, and he's, you know, abusing his girlfriend in the process. In addition. That's a case against him. I mean, I think in that direction is where your stronger claims are, but it's a case against Michael Kay as a state actor, is it? Correct. There's lots of different claims, but that's one of our claims, yes. And then, but primarily for, against his colleagues in the police department who did not, to some degree, again, aided him in carrying out the harassment afterwards, later. And some of it, I mean, like circling her house and, again, going into the house several times and apparently allowing her to, him to harass her on her own territory might have something to it, but that whole second piece seems to be still in the case. So the question is what's not in the case partakes of the character that you're talking about now, specifically, more specifically, that is, using the power of the police and therefore differentiates the regime, because there may be something there. I'm not sure. Using the power of? Of the authority of the government to carry out the harassment and other activity, rather than simply not being there. Okay. One of the strongest points that I wanted to make is about the violation of the restraining order on December 19th, 1998. At that point, Officer Kaye called up Officer Thiem and said, yes, I had contact with Ms. Goodell. And then, you know, he said some other things, that she was going to call him and report it. And she, in fact, did call and report it. So Officer Thiem, at that point, instead of investigating, he came and he ridiculed her. He had officers drive by to try to show that there's no way possibly that she could have distinguished one officer from Kaye. And he failed to investigate that. That incident later, Officer Kaye was convicted for intimidating and menacing Ms. Goodell. He was convicted of the violation of the restraining order for intimidating and violating Ms. Goodell. So if you could be more specific then about what the constitutional right is that was violated at that point. It does seem that there was more, some active involvement under State law rather than simple absence. Some of it's just simply not following through, but some of it is somewhat more than that. So what's the constitutional rubric at that point? Well, there's a number of them. First of all is her right to not to associate with Ms. Kaye, Mr. Kaye. By failing to enforce the restraining order, they were basically saying, look, he can have as much contact with her as he wants. And under the Supreme Court precedence, there's a right not to associate with other parties as well as a right to associate with other parties. You just have J.C.'s backwards, don't you? I mean, J.C.'s is recognized as a right of expressive association, which this is presumably not. And then it recognizes a limited right of intimate association, which you'd have to try and fit this under. Right? Correct. But just as J.C.'s allows for a right not to associate, that in addition can be applied to the right not to associate in the intimate context. In addition to the other constitutional violation we're alleging here is her right to seek redress for her grievances. By not applying the restraining order, by not enforcing the restraining order, they denied her her right to redress her grievances. But the right to redress is never a right to get an answer. It's a right to seek, right? It's never. In fact, there's a case, a Minnesota case, which was named Minnesota v. Knight, I think, which says specifically that the right to petition for a redress of grievances doesn't mean anybody has to talk to you or answer you. Correct. But at that same point, they were denying her right to seek the enforcement by, you know, minimizing her complaint, by not investigating it further, by not even looking for probable cause. I guess I'm just not seeing a clear line of demarcation between this case and thousands of other cases where a restraining order isn't enforced the way that it should have been in Minnesota. Well, the difference is, is that this is a police officer. And in addition, the police force in both the city of Newport and the city of Toledo assisted Kaye in the constitutional violations. I'd like to reserve. Let me tell you what I think is actually your strongest claim, and I want to know what the record is. And that's this notion that they specifically withdrew police protection from her by saying that the police weren't allowed to have any contact with her. But there seems to be a big evidentiary problem with that. And maybe you can tell us when you come back. There's a document that is alleged in the complaint but doesn't seem to be in the record with regard to the fact that there was such an order. I mean, that seems to me has some of the feel of what was allowed potentially to go forward in some of the cases as treating her differently than everybody else, not just ignoring her, but affirmatively withdrawing police protection. Correct, Your Honor. I'll have to look for that in the record, the specific site to that when I come back. Do you know what document Judge Brewer's on? It's a letter regarding that you put in the SCR, I guess, and that there's a dispute about whether it can be judicially noticed. But it doesn't seem – I don't understand how it could be judicially noticed, and I don't see it anywhere in the record. You wrote something about it, about the fact that it was mentioned in the complaint, which it was. But it doesn't seem to have ever gotten in the record. My understanding is that there's a memo that exists that talks about not having contact with Ms. Goodman. Which is not in the record, right. And also there's a letter of termination for Ms. Zirkle. And the letter of termination appears at least in the documentation that we have, but I don't think it's actually entered in the record. That's what I want to know. And the memo was not anyplace. We've never seen it, right? Am I right about that? I'm not sure, Your Honor. I'd have to go back and look in the record. Thank you. Thank you. May it please the Court, I'm Ruth Rocker. I'm here on behalf of the Toledo defendants. Plaintiff's claims on appeal allege novel theories of constitutional violations based on unsupported assertions of violations of state law, which do not rise to the level of constitutional violations. Fundamentally, Plaintiff's case is premised on an erroneous theory that a violation of state law necessarily implicates federal constitutional protection,  and although we recognize that this Court has de novo review in this case and that all reasonable inferences from the evidence must be drawn in Plaintiff's favor, this does not permit the plaintiffs to escape their burden under FRCP 56B to come forward with sufficient evidence to create an issue of fact. How do you read that statute that says that there's probable cause you have to arrest? Well, that statute says, the preamble to the introductory language of the statute says when they're on the scene. So as the Court recognized this discussion with Plaintiff's counsel. Well, suppose they were on the scene, and suppose the same argument was being made. They were there. They saw him hitting her, and they didn't do anything. Then would there be a constitutional claim? No. That would be. So it doesn't make a wider difference, then. It doesn't, other than the probable cause. In this case, the police officer's probable cause determination, or their determination that there wasn't probable cause, was partly dependent on the fact that that statute wasn't implicated because they weren't at the scene of the crime. Well, if they were at the scene, and they saw him hitting her and did nothing, would the statute be violated? Perhaps. But you would say there was still no liberty interest created? But no liberty interest created. That's an issue of State law. Why? Well, under Descheny, under the numerous cases that was done. But Descheny doesn't deal with that particular problem. I mean, Descheny is assuming a discretionary situation in which there is ordinary prosecutorial and or, in that case, social worker discretion or caseload management. And here, assuming that we had a statute which actually, for unusual reasons, in the domestic violence situation, did provide that the person had to be arrested, why wouldn't that create a liberty interest in the victim? Well, in this case, with the Oregon statute, there is no legal authority suggesting that this statute or any of the Family Abuse Prevention Act statutes create an entitlement that is – that warrants constitutional due process protections. And additionally, even if this mandated – the rule under the case law is that there has to be substantive discretion that mandates a particular outcome. What's the remedy if there's a violation? State tort law remedies. I'm sorry? State tort law remedies. Is the state tort law remedy that would hinge on the fact that they should have but didn't arrest him, assuming they should have but didn't arrest him? It's alleged in this case. One of the state tort claims against the defendants is that they violated the statute. And you're saying that that would be an appropriate remedy if it were timely and so on. And if the statute also required it. If it were timely and the statute required it. What if the police take affirmative action to prevent her from receiving the normal police protection that would protect her liberty interest? Would that be a constitutional violation? Under the substantive due process claim, if there was affirmative action and it amounted to a conscious indifference to her safety interests and it actually restrained her ability, the police affirmatively restrained her ability to act on her own behalf, then Grubbs, then the other cases, plaintiff's site, all of those cases do create that, do recognize that danger creation. Don't we have some indication in this case that that was what was happening? That the police were together, in effect conspiring, to protect Kay, but not to protect her by, you know, all the circling around and not answering her responses to Kay, not keeping Kay away from her. The police are doing these things to which, in effect, are really depriving her of her liberty. Well, that gets me back to where I was starting in terms of these. There's a lot of assertions made in the record that aren't or that in support of arguments with respect to evidence that's not in the record. Well, on the direct contact order, I mean, there seems to be a – I mean, there's an allegation in the complaint and there is a letter which seems to say this, whether we can take cognizance of it or not take cognizance of it is another question, but if there's something wrong with it, it's sort of a technical failure to have introduced it into evidence. Well, are you speaking about this alleged policy of no contact? Yes, which is mentioned in this letter. I've seen the letter. And the memo is not – are you looking at the – I'm not looking at the memo. I don't think we have the memo. Do we have the memo? We have a letter to the guy who was fired. Right. I don't think we have – if we've seen the memo, I'd like to know about it. I don't know where it is. Well, are you looking at the further excerpts of record? Probably. That's probably what I'm looking at. Make sure we're looking. I don't know where they are. It's in memo form, too, from – but it does say Officer Gillespie. Right, Officer Gillespie. Okay, yes. That was not introduced. This is in plaintiff's further excerpt of record, page 6. It says that there were special orders to all personnel to have no contact with them. Right. Right. I hesitate to even discuss this without making the argument that this isn't in the record, but I'm assuming by your questions that you want me to disregard that threshold. First of all, it's true. I mean, as I understand it, it is not in the record. Is that right? It is not in the record. It is alleged in the complaint with this very language, but the complaint wasn't verified and it was mentioned as a trial exhibit but was never actually introduced into the record. It was never introduced on summary judgment. The trial court never had it before. And if you read the letter in context, if we're going to get to the substance of it, what it's saying is not that Ms. Goodell has no remedy here through our police department. We will not answer her calls. We will not respond. What it says is you officers do not affirmatively go to contact Ms. Goodell. Do not make contact with her. Do not go to her apartment. Now, of course, if she calls, which the evidence shows that when she did call. Wasn't it that not that they were to go have contact, but you were to have no contact. Isn't that what it was? That's the way it's written. But I believe that the reasonable inference based on the context is and based on what actually happened. I mean, clearly, if the policy as plaintiff is interpreting it was that way, then the Toledo Police Department went against their policy because they responded to phone calls. And they responded to. When did they respond to phone calls? There was one telephone call after one of the civil standbys, and it was actually the only evidence of a report to the Toledo Police Department of a violation of the restraining order. And that's when Toledo Police Department offered to send an officer. Ms. Goodell didn't want the officer who was being sent to come. So she abandoned her report and didn't file the complaint. So, you know, they clearly didn't say, oh, this is Ms. Goodell. Can't speak with you. Goodbye. Go to OSP. That didn't happen if you read the context of the letter. That's clearly not what they're getting at. They're saying don't affirmatively go. In fact, I believe it's in this memo. When you look at what the basis of termination was that this officer, Gillespie, did actively seek out her companionship and get involved in the case sort of on the sly. He got fired. He did get fired. But that's because he pursued her. He didn't get fired for responding to a complaint. Were people told to have no contact with Mr. Kaye? With Mr. Kaye? Yes. Not that there's evidence in the record. The evidence in the record is only that the contact between Mr. Kaye and plaintiff that happened with police assistant. Assistance was always at request of defendant Kaye under the civil standby statute. Do we know that that was true with regard to the officer that got fired, that he initiated the contact or that she initiated it? Do we know? Well, we know from the description of the basis for the firing that it was his initiation of the contact. That's right. And I want to be sure to leave plenty of time for my, so unless there's any further questions. Thank you. Please record. I'm Jason Montgomery for the Newport. Rather than going over the legal arguments or the brief, again, I wanted to point out, I think, one of the greatest weaknesses with the appellant's case here is almost total lack of evidence or support. I think it's very important also for the court to be focused on what evidence is in the record and what sort of factual incidents are really at issue. And I'll just say right now that the only incident, I think, that the appellant has argued as a basis for a claimant's relief and presented evidence on is the incident on December 19th, 1998, on which a sergeant team responded to a call from the appellant and investigated her complaint. But I want to get away from that, first of all, and talk about some assertions that have been made in the briefs and that were made below an oral argument on the summary judgment hearing that were never backed by evidence. First of all, there's some facts surrounding that December 19th, 1998 incident, which have never been supported by evidence. First of all, the assertion that the sergeant team was demeaning, dismissive, or as was put today, ridiculed Goodell has never been backed by evidence, not even by an affidavit. What about her evidence? What did she say? It's not in her affidavit. And I understand that a lot of these things might be cured by an affidavit from Goodell herself, but it seems as if in an oral argument and in the briefs, the attorneys have taken her words and, I guess, sort of liberally construed them in favor of their claims. Goodell did state in her affidavit. Where is her affidavit in the record? I'm sorry. I don't want to just flip. I think it's on 84. For instance, there is, hopefully I can find it here. There is a reference to circling her house, and she says that Kay did it. There's never been any evidence that any Newport officer circled her house. There have been allegations, and it includes her statement to that effect. Furthermore, even if there was evidence in the record that I have missed somehow that cars circled her house, there's never been any evidence that they were Newport cars, that Goodell identified them as Newport cars, or even more importantly, there's never been any evidence that it was any of the defendants in this case. There's never been any evidence that Huber was in one of those cars, or that team was in one of those cars, or that Rivers was in one of those cars. And I guess the problem I have is a lot of the claims are sort of premised on this conspiracy or this course of conduct, and yet the only evidence in the record is that there was one complaint made by Goodell, a single complaint made to the Newport Police Department, and the Newport Police Department responded to that complaint. The evidence in the record with regard to that complaint is that team took the call. He called an officer who was at the Shiloh Inn on the scene, asked him whether Michael Kay was at the incident. The officer informed him that he was not, and then team concluded logically that, well, perhaps Goodell has confused this other officer with Michael Kay. There's no controverting evidence to suggest that there was any conspiracy involved. There's no evidence to suggest that this was an up front or that it was not made in good faith. And then outside of that instance, there's simply no evidence that the Newport police officers did anything to form a basis for the appellant's claims to relate, that they denied her access to the courts in any way, or that they violated her liberty interest by failing to arrest Kay. They weren't present on any of the no contact orders. So, again, I won't beat that up too much, but I think the court should have in mind that really the only evidence in the record is that December 1988 incident. Is the only information from Goodell herself directly in the evidence that one affidavit? I think there was another affidavit, and I've searched through it, and I didn't see those. But there's no deposition of her? I apologize. I wasn't here for the lower court proceedings. I don't recall whether it was or not. Now, another issue I wanted to raise is the Monell liability issue. And the reason I need to raise that is because the appellant correctly knows it wasn't addressed in our brief, our response brief. And that is because the only Monell argument advanced at the summary judgment phase by the appellant was an argument that Chief Rivers, the city could be liable for the actions of Chief Rivers as a final policymaker for the city. That was the only Monell argument made. The appellant has not advanced that argument on appeal and has instead converted her Monell argument into a new argument, which was only asserted in her reply brief and which we've not had a chance to respond to. And that we've also moved to strike. Consequently, the documents associated with that argument. This was a 54B judgment? I'm not sure. You don't know how we had jurisdiction? There are some claims that are still before the trial court and some claims that are here. It is a 54B. Yes, that's correct. But how is that? Because this has been troubling me. I understand some of the defendants were out of the case, and that makes sense. But is it true that with respect to other defendants, basically what's happened is the 1983 cause of action has been chopped into pieces? And some pieces of the 1983 cause of action is going on and some is not? My understanding is that the Fourth Amendment claims, they can correct them by law. Well, can you do that? I mean, that's very odd because basically there's one cause of action for 1983. You can't. You have to disclose all the claims. I would suggest that it has no bearing on the Newport defendants. That may be. That was my question. Why doesn't it have any bearing on you? Because none of our claims survived. Okay, okay. It was, I believe, Fourth Amendment claims, and I would let them address that. Okay. And perhaps we should hear from who's left. So I guess I was making the argument that we've seen entirely new Monell arguments that were not raised below. We haven't had a chance to respond to them. And for that reason, I think summary judgment should be affirmed on the municipal liability, in addition to the fact that the promotional strategy is pending on the evidence that was submitted. I would also make the point that until today, there was no argument advanced on appeal that defendants of Rivers or Huber in their individual capacities should be liable for any reason. There's simply no argument. And the briefs. And then the only hints of an argument I got today was a brief statement that I believe, I don't know if this was targeted specifically at Rivers, but it had to do with our receipt of information on the first night, and that we didn't arrest Kaye on that night. You have one other attorney to argue, do you not? Oh, yes. Yeah, I think you better. Oh, I'm sorry. I thought the yellow would like. Okay. You better subside. Okay, I will. This is the total time. I'm not sure how much time I have. Well, we'll give you a couple of minutes. Could you help? You're representing. Wait, wait until you get to me. Thank you. May it please the court, Robert Beatty Walters on behalf of Michael Kaye, defendant of L.A. Okay, now what, are there any claims against your client that? There are no federal claims remaining against my client, and in fact it's our position that there are no state law claims remaining against my client left to be decided by state court at a later time or on supplemental jurisdiction if the court were to decide that the trial court abused its discretion in declining to accept supplemental jurisdiction. So. That's what you're arguing, that they abused its discretion in declining to accept supplemental jurisdiction because it should have decided the. No. No. It's plaintiff's position that the trial court abused its discretion in declining to exercise supplemental jurisdiction over the state law claims remaining against Michael Kaye. It is our position that the plaintiff, by entering a stipulated judgment of dismissal with prejudice, as to those remaining state law claims, has abandoned them. So. Well, that's why I am really kind of confused about the jurisdictional basis for this. And since there are no longer any constitutional or federal claims against Michael Kaye, the issue remains against some of the Toledo defendants only. So as to the status of the 54B judgment, my client has not been involved in that because the claims against Michael Kaye have all been dismissed by the court. The federal constitution claims. I gather that what they thought they were doing was simply entering into a judgment implementing what the district court had said, which was that he wasn't going to go ahead with the state court process of action. Dismissing them with prejudice. Does dismissing them with prejudice mean anything more than, as far as federal court is concerned, there's not going to be a case. Does that necessarily fulfill the state court case? Well, I believe it would because then it would be res judicata. The case has been dismissed. There's no ruling on the merits. There is no ruling on the merits. True. But the stipulated judgment of dismissal was not without prejudice either. It was with prejudice. I'm not at all sure that ordinarily when a district court declines to exercise supplemental jurisdiction, does he necessarily dismiss without prejudice? He's not certainly inviting anybody to come back to federal court. He's finally determining the fact that there's not going to be a decision in federal court, and that's it. Clearly. Whether there is or isn't a case in state court is up to state court. Correct. Your question initially was whether or not there are any federal claims remaining against Michael Kaye, and my point was to say that no, there are no federal claims against Michael Kaye remaining, and none of the state law claims remain either based on our theory. In this court, that's all. That's all we can decide. That's correct. We're not going to say anything about what's going to go on in state court. That's correct. Insofar as the appealability of this order is concerned, your client is out of the, which one? The Newport defendants are also out of it. And Toledo, what are the claims that are left? It's not my issue, Your Honor, but I will do my best to explain what my understanding of those issues are. There are a number of individual defendants who remain in the case on discrete Fourth Amendment violations, alleged Fourth Amendment violations. That part just sounds weird to me. Yeah. Because if those people also were alleged, basically there's a 1983 cause of action against a set of defendants, and if defendants have not been dismissed out of the case altogether, and there remains a 1983 cause of action, I don't see how we can get the 1983 cause of action divided into pieces. That's what the 54B judgment did in this case. That's what he tried to do, but we're questioning whether he could do that. And I don't have the answer to the court on that issue. Okay. Well, I think maybe we understand that your time has more than expired, and I think you've said all that you want to say. Could I ask the counsel for ...? Thank you. Thank you. Could I ask the counsel for Toledo what the situation, as you see it, is with respect to our appellate jurisdiction? Could you please approach the microphone? We did question this, actually. Yeah. When we received it, because it was a stipulated judgment, the judgment itself is entitled stipulated judgment of dismissal, and it's pursuant to FRCP as well as the stipulations of the party. That's not going to solve our jurisdictional problems. What are the claims left? It's the Section 1983 Fourth Amendment unreasonable search claim. What the district court found ...? I'm going to stand by police officers, right? Right. What the district court found, as you see from these different orders, the factual basis of plaintiff's claims were constantly changing. During brief writing, at oral argument, whatnot. And so the court was constantly being bombarded with, well, this also supports that claim, and this also supports that claim. What the court did was say, this theory of these multiple standbys, there's no support in Oregon law that that's unconstitutional, that more than one is not permitted. Therefore, you can't go forward. That factual basis, that argument's bad. Don't move on that. However, what the court did was assist plaintiff and say, you've got two decent claims here where there's at least factual disputes. I'm going to let you go forward on those. So he didn't dismiss, you know, I would say that the court did not dismiss a part. I guess I'm not really understanding the trouble with what the court did and how that concerns him. He, in effect, left the claims against the individual officers for what they did standing by and separated out the fact that there were two cases in which they were not authorized, two situations in which they were not authorized to go with Kay to her home. I disagree with that. Well, you tell me what you. What the court found there was not that they were not authorized to go because the court explicitly found that under Oregon law, there was no authority that they were not authorized. Well, I thought the preliminary or the restraining order said that under that statute, you can go one time. And then there was. What the way the statute says is you are entitled one civil standby. Right. It doesn't say you are precluded from further civil standby. And the legislative history that is in the record shows that the purpose of that was to allow protection for the victim, not to limit. The thing that's troubling me, and I think Judge Schroeder, however, is that ordinarily you don't have interlocutory appeals. And this 54B authorization, at least as I've always understood it, allows the court to enter a judgment on a cause of action as a whole. But he didn't do that. He didn't say there is no 1983 cause of action against these defendants. He said part of the 1983 cause of action I disagree with and part of it I agree with, or I'm going to allow it to go forward. And that seems like a classic division of a case into one piece on appeal and one piece that's going on to trial, and that's exactly what's not supposed to happen because they're interwoven, as this discussion demonstrates. But I guess the way the district court viewed it and the way defendants view it is they are not interwoven. One issue was are multiple standbys constitutionally impermissible? The court found no. And even if they were, defendants are entitled to qualified immunity because there's no... But then I guess what remains is what happened during those civil standbys. That is what alleges this section. Well, it may be that there's an appeal... Well, okay, I guess we can sort it out. We've more than used our time, and we'll try to figure it out. I think we should let the appellant perhaps enlighten us a little more on this. Thank you. I wish we had a copy. Okay. First, I wanted to get to the part of the excerpt of record. As Ms. Rocker pointed out, there's a letter to Gillespie in our supplemental excerpt of record. It's my understanding, as informed by my co-counsel, that there was, in fact, no written policy that we've run across about not contacting Ms. Goodell, and that's a dispute of fact that the defendants claim that there was no policy to deny Ms. Goodell contact with the police. However, based on the letter to Gillespie, the reasonable inference, in the light most favorable to Ms. Goodell, is that there is, in fact, no contact order with the police with regards to Ms. Goodell. In addition, Mr. Montgomery mentioned that there was no evidence of a conspiracy. However, based on the facts that are alleged by plaintiffs, there's a reasonable inference that the city of Toledo and the city of Newport were involved in protecting Mr. Kay and not protecting Ms. Goodell and informing her of her rights or enforcing the rights that she had. There is, in fact, an affidavit of Ms. Goodell in the lower court record, and at this time I'm going to either move to supplement the record with this or ask the court to look at that in the court file. It's the Affidavit of Plaintiff Angela Goodell in Opposition to Newport Defendant's Motion for Summary Judgment, and in this actual document is the evidence of Thiem demeaning her and humiliating her when she brought her complaint to him about the violation of the restraining order on December 19th. Getting back to the Rule 54B issue, what happened here is that this case was dismissed completely with regards to Michael Kay and the city of Newport. I don't have any problem. Okay. So based on those two dismissals, that was a final judgment as to those two defendants. It was the city of Toledo, too, I think, because he found that there wasn't a Canton v. Harris cause of action, right? Well, it wasn't dismissed completely because of the Fourth Amendment. I could be wrong about this, but I thought that he found that even with respect to the part of the case that he allowed to go forward, that the city of Toledo wasn't Michael. No. No? No. He ruled that there was a disputed fact issue. We actually briefed this issue before the Court of Appeals on a motion to show cause why this should be here. And so we briefed this issue, and it was already decided. I know. I know. So I don't know if that has sort of a preclusive effect. Thank you. So just what is it that's still bound? Just tell me, what is still before the district court? The only thing that's before the district court was the conduct inside the civil standbys, which is the Fourth Amendment search and seizure violation. Against whom? Against the city of Newport. And against who else? That's it. Just against the city of Newport? Correct. Against an individual defendant? Well, I mean the city of Newport and Fandry and Eoff. The city of Toledo, anyway. Yeah, sorry. The city of Toledo. Toledo. Fandry, Eoff, I believe Graves and Dennison. It was the officers that were there that done those two standbys. And that's a search and that's a Fourth Amendment claim. Correct. That is independent of all the claims against the other parties and the city itself, the city of Canton and all that stuff. Right. Okay. Thank you. Thank you. Okay. Case with argument is finally submitted for decision. That concludes the Court's calendar for today. The Court is adjourned.
judges: Schroeder, Hug, Berzon